McIlvaine, J.
The court below charged, “ that if the jury were satisfied from the evidence that the steamboat America was destroyed by fire, and that no material injury was done her by the collision, then the plaintiff's are entitled to recover for said loss or damage caused by fire, notwithstanding such fire may have been caused by the collision,” and refused to charge as requested by the defendant below, “ that loss or damage from collision being ex- *46 ceptecl, and the defendant not liable therefor, the defendant is not liable for any loss or damage from fire where a collision was the direct, immediate, and proximate cause of such fire, and without which the loss would never have occurred; in such a case the loss is to be attributed to the collision and not to the peril of fire.”
Whether there was error in the charge as given, or in refusing to charge as requested, depends solely upon the proper construction of the policy sued on. The form of the policy, as printed, assumes to insure against the perils of seas, lakes, rivers, etc.; but the contract of the parties, as evidenced by the terms therein written, which must control in its construction, clearly shows that the only risk assumed by the underwriter was loss by fire; and that the perils of rivers, etc., including collisions, were not insured against at all as proximate causes of loss or damage.
The undertaking of the defendant to insure “against loss by fire only,” must be held to embrace losses by fire generally, without regard .to the cause or causes which produced the fire. The qualifying word “ only,” was not intended to limit the liability of the insurer to losses by a fire caused by any particular agency, or to exclude such liability where the fire was caused by a particular agency, but simply to show that no risk whatever was assumed except loss by fire.
Such is the scope of an insurer’s liability arising upon the terms of a contract to insure against loss by fire only. In the policy now under construction, however, the parties, by subsequent clauses, excepted from the scope of the general undertaking of the insurer, losses occasioned by certain specified causes — that is to say, losses by fire produced by the causes named in the exceptions. See The United L., F. & M. Ins. Co. v. Foote, 22 Ohio St. 850. Among the causes of fire so excepted, however, collisions are not named.
The court below, therefore, did not err in refusing to charge as requested by the defendant, for the reason that the request assumed that “ loss or damage from collision ” *47 was excepted from the risks covered by the terms of the contract; which assumption was contrary to the true construction of the policy. Nor was there error in the charge as given.
Among the losses excepted from the risk by the warranties in the policy, was loss or damage caused by barratry.
Testimony had been offered on the trial tending to prove that the pilot of the America had neglected and failed to observe the rules established under the act of Congress, by the supervising inspectors, for his observance in such case, whereby the collision was caused. And other testimony had been offered tending to prove that such neglect or failure to observe the rules by the pilot was neither willful or fraudulent on his part; and further, that if the rules were departed from at all, it was in an emergency, in which the pilot honestly believed that it was necessary to do so in order to avoid a collision.
Upon this subject the court charged the jury as follows:
“ The second defense is barratry, which may be said to comprehend not only every species of fraud and knavery committed by the master or pilot, with the intention of benefiting himself at- the expense of the owners of the boat, but every willful act on his part of known illegality, whereby the owners are in fact injured. It consists of some fraudulent act intended to injure them, or of a willful violation of known positive law in the navigation or management of the vessel from which the loss resulted.”
[The court here read the rules and the act of Congress as recited in the statement of this case, and continued:]
“These rules are intended to avoid collisions between boats ascending and descending the river, and they prescribe the course to be pursued by the pilots. They are made to be observed, and are binding as law upon the pilots, subject, however, to any emergencies by which it may become necessary to depart from them to escape or avoid immediate danger from collision or other perils.
“ It is claimed that the pilot willfully violated these rules of navigation, established under a law of Congress, by fail *48 ing to give the signals required by the rules, and by omitting to stop when the boats had come within a distauce of eight hundred yards. These rules are in evidence, and the pilots are bound to obey them unless some emergency in the course of navigation occurs justifying a departure from them to avoid a collision or other danger.
“ The rules require that when the boats have approached within one mile, the pilot of the ascending boat shall sound the whistle to notify the pilot of the descending boat on which side he will pass; and that if the signals are not answered and understood by the time the boats have approached to the distance of eight hundred yards, he shall stop his boat until the signals are corrected and understood. Now, if the pilot of the America, on approaching the United States, when they had approached within the mile, knew or believed that they had come within the mile, and chose to omit to give the signal required by the rule; or, if when he knew or believed that they had approached within the eight hundred yards, without satisfactory signals, he did not stop, although he knew that the rules required that he should stop, but chose to risk the violation of the rule, and the result of such violation of the rule was the loss, that would constitute such misconduct of the pilot as to prevent a recovery, though he did not actually intend an injury to the owners. He is not at liberty to prefer his own judgment to the rule required by law, unless there be some emergency requiring a departure from the rule. But he must deliberately, or voluntarily and knowingly violate the rule in order to constitute such misconduct as to prevent a recovery. The rules are made to be observed by pilots; they are intended for the safety of the public and for the protection of the owners. Whether they are the best that can be made or not, while in force they must be observed, and a willful disregard of them is misconduct; and if a loss is caused thereby to the owners, it is a loss by barratry, which is excepted from this policy.
“ But in establishing this defense, the burden of the proof is on the defendants. They must make it appear *49 by a fair preponderance of evidence that the pilot of the America did violate the rules knowingly, and the loss was the consequence.
“Mere error of fact or of law is not sufficient to establish a defense on this ground. The pilot must know his duty, and decline to do it. If he supposed that the distance was a mile when he gave the first signal, and intended to comply with the rule by the signal which he gave, the fact that he may have been mistaken in his estimate of the distance is not misconduct, which is a defense. So, if when the boats approached to the distance of eight hundred yards, the pilot of the America knew it, or believed it, and knew that the signals had not been answered or properly understood, and yet failed to stop or back his boat according to the law, that would be such misconduct as would be a defense against a suit for a loss caused by it. But if by reason of the darkness of the night, or other causes not under his control, he was mistaken as to the fact of their approach to the distance of eight hundred yards, until they had approached much nearer, such mistake would not be misconduct to defeat a recovery.
“ The pilot is not to set up his judgment against the rules, unless there arises an emergency in which he should honestly believe that it was necessary to depart from the rule to avoid a collision or avoid danger. But .if he, in good faith, endeavored to comply with the rules, of navigation and to avoid a collision, though he may have erred in his-estimate of distances, and though he may have been mistaken as to the interpretation of the rules, he can not beheld to be guilty of such misconduct as to constitute a-defense.
“You will limit your inquiry on this subject to the conduct of the pilot in charge of the America, as the only barratry which can defeat this suit must be of the officer© or crew of the boat, for the loss of which this suit is brought.”
We find no error in these instructions of which the de *50 fendant had right to complain; nor do we find any error in the record, for which the judgment should be reversed.

Judgment affirmed.

Day, C. J., and Welch, White, and Res, JJ., concurring.